1
2
3
4
5
6
7

8           **UNITED STATES DISTRICT COURT**

9           **SOUTHERN DISTRICT OF CALIFORNIA**

10

11    UNITED STATES OF AMERICA,                    CASE NO. 06cr1241 DMS

12                               Plaintiff,        **ORDER DENYING**
                                                   **DEFENDANT'S MOTION UNDER**
13          vs.                                    **28 U.S.C. § 2255**

14    JAMES MINCOFF,                               **[Docket No. 302]**

15                               Defendant.

16          This case returns to the Court on Defendant's motion to vacate, set aside, or correct his

17    sentence pursuant to 28 U.S.C. § 2255.  The Government has filed a response to the motion, and

18    Defendant has filed a traverse.  After reviewing the motion, opposition, traverse, and all supporting

19    documents and the record on file herein, the Court denies the motion.

20                                               **I.**

21                                        **BACKGROUND**

22          On June 6, 2006, Defendant James Mincoff, was indicted for conspiracy to distribute cocaine

23    in violation of 21 U.S.C. §§ 841(a)(1) and 846.  The indictment also named three other individuals:

24    Juvenal Vega-Soto, Stephen Perry and Jessie Munoz.   The indictment was part of a larger

25    investigation of the Mexican Mafia which resulted in five other indictments against numerous other

26    individuals.

27          Munoz was arrested on June 16, 2006.  Mincoff turned himself in and was arrested on July 12,

28    2006.  Between August 4, 2006, and June 29, 2007, the Government produced approximately 48,000

                                              - 1 -

1  pages of documents and other relevant materials to defendants in each of the related cases.  The

2  Government disclosed recordings and transcripts of conversations from wiretaps on phones used by

3  Munoz, including incriminating evidence against Mincoff from several phone calls in late July 2006,

4  and impeachment evidence against Munoz from several phone calls in mid-August 2006.

5        On June 25, 2007, Munoz pled guilty to one count of conspiracy to distribute cocaine in

6  violation of 21 U.S.C. §§ 841(a)(1) and 846.  The following day, the Government filed a superseding

7  indictment against Mincoff adding a count for attempted distribution of cocaine and a count for

8  unlawful use of a communication facility in violation of 21 U.S.C. § 843(b).

9        Mincoff's trial started on August 20, 2007.  Munoz testified as the "main government witness"

10 at Mincoff's trial.  *United States v. Mincoff*, 574 F.3d 1186, 1190 (9th Cir. 2009).  On August 23,

11 2007, the jury found Mincoff guilty on all counts.  The court subsequently sentenced Mincoff to 240

12 months in prison.

13       After the jury's verdict but before sentencing, the Government disclosed an additional batch

14 of discovery to defendants pending trial in the related cases.  Within that discovery was a report

15 authored on February 21, 2006, by Federal Bureau of Investigation ("FBI") Special Agent Allan

16 Vitkosky detailing his  meeting with an unidentified individual "in a position to testify." (Mot. to

17 Vacate, Ex. C.)  The individual was most likely Munoz. *(Id.)*  The report recorded incriminating

18 evidence the individual provided law enforcement against Thomas Durkin, a defendant in a related

19 case.  According to the report, Durkin was charged in state court with possession of two ounces of

20 methamphetamine, and he conspired with Munoz to suborn perjury from Ricky Contreras to

21 undermine the state's case against Durkin.  Four sentences of the report bore some relation to the

22 conspiracy to suborn perjury:

23       DURKIN also wrote, "RICKY did good . . . did the right thing.  I know I'll blow them
         out of the water in motions."  According to the Individual this is a reference to RICKY
24       CONTRERAS, who  testified  falsely  at  the  Preliminary  Hearing  (sic)  that  the
         methamphetamine belonged to him and not DURKIN. (Intercepted conversations
25       indicated that DURKIN and JESSIE MUNOZ elicited the false / perjured testimony of
         RICKY CONTRERAS on behalf of DURKIN).

26

27 (Mot. to Vacate, Ex. A.)  This report and the timing of its production are at the center of the present

28 motion.

06cr1241

1   ///

2   **II.**

3   **DISCUSSION**

4       Mincoff raises three arguments in support of his Motion to Vacate Conviction and Sentence.

5   First, he alleges the government suppressed Special Agent Vitkosky's FBI report in violation of

6   *Brady v. Maryland.*   Second, Mincoff claims the Government's suppression of the FBI report

7   effectively denied him his Sixth Amendment right to confront witness Munoz.   Third, Mincoff

8   contends that if the Government did not improperly suppress the FBI report then his trial counsel was

9   ineffective in failing to identify and exploit evidence of Munoz's involvement in a conspiracy to

10  suborn perjury.   The Government disputes all arguments.

11  **A.    *Brady v. Maryland***

12      Mincoff argues that the Government improperly withheld impeachment evidence: the FBI

13  report discussing witness Munoz's conspiracy to suborn perjury.   Due process requires the

14  Government to disclose to the defense any evidence favorable to the accused.  *Brady v. Maryland*, 373

15  U.S. 83, 87 (1963).   Impeachment evidence that can be used to undermine the credibility of a

16  government witness is considered favorable to the accused.  *United States v. Bagley*, 473 U.S. 667

17  (1985).   Constitutional error occurs where the Government suppresses evidence  favorable to the

18  accused and  that evidence was material to the outcome of the trial "such that the defendant was

19  prejudiced by the suppression."  *Bailey v. Rae*, 339 F.3d 1107, 1113 (9th Cir. 2003).   Evidence that

20  witness Munoz undertook subornation of perjury was favorable to the extent it could have been used

21  to impeach his credibility before the jury.

22      Here, however, there was no *Brady* violation because the Government disclosed the favorable

23  evidence. *See United States v. Goodwin*, 41 Fed. Appx. 115, 117 (9th Cir. 2002), (citing *United States*

24  *v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991)) ("There is no suppression where the defendant has

25  sufficient information to ascertain the *Brady* information on his own.").   All of the relevant

26  information in the FBI report was disclosed to Mincoff  in the form of recordings and transcriptions

27  of phone calls that clearly indicated Munoz participated in a conspiracy to suborn perjury and many

28

other crimes.  Among the relevant recordings and transcripts was an intercepted call between Durkin and Munoz on August 16, 2005, in which the following exchange took place:

| [Munoz]: | Well was it on somebody's person? Was somebody carrying it? |
| [Durkin]: | Huh? |
| [Munoz]: | Was somebody carrying it or did . . . they find it in the car? |
| [Durkin]: | Well I don't know.  I don't know.  Uh . . . they kind of . . . I don't know exactly what happened, you know.  I . . . I probably won't know, I, uh . . . |
| [Munoz]: | You know who you can talk to . . . you know, you know that name, what's his name, Rick? |
| [Durkin]: | Huh? |
| [Munoz]: | Ricky?  Ricky? |
| [Durkin]: | What about him? |
| [Munoz]: | You should tell him to suck up and say it was his. |

(Respondent's Opp'n. to Mot., App. at 20.)  The FBI report's only additional mention of the conspiracy to suborn perjury reflects Contreras's actual commission of perjury and suggests no further action by Munoz and no additional grounds for his impeachment.

Mincoff cites *Benn v. Lambert*, 283 F.3d 1040 (9th Cir. 2002), and argues in effect "the state cannot satisfy its *Brady* obligation to disclose exculpatory and impeachment evidence by making some evidence available and asserting that the rest would be cumulative." *Id.* at 1058.  However, in *Benn* the Government actually suppressed evidence and that evidence concerned the witness's history of lying as an informant and perjuring himself as a witness.  The Ninth Circuit affirmed the district court's holding that the suppressed evidence revealed the witness to be "completely unreliable, a liar for hire, ready to perjure himself for whatever advantage he could squeeze out of the system." *Id.* (citing *Benn v. Wood*, No. C98-513FDB, 2000 U.S. Dist LEXIS 12741, at *13-14 (W.D. Wash. June 30, 2000)).

06cr1241

1   This case is distinguishable from *Benn* on two grounds.  First, the Government did not suppress

2   material evidence.  *Bagley*, 473 U.S. at 682. ("[E]vidence is material only if there is a reasonable

3   probability that, had the evidence been disclosed to the defense, the result of the proceeding would

4   have been different.")  The exclusion of the FBI report did nothing to affect Munoz's credibility

5   because the same information was contained in discovery. Consequently, there is little possibility -

6   let alone a "reasonable probability" - that disclosing the FBI report would have had any effect on the

7   outcome of Mincoff's trial.

8       Second, even if Mincoff had impeached Munoz regarding the conspiracy to suborn perjury,

9   it would not have substantially changed the jury's assessment of his credibility.  Both the Government

10  and Mincoff provided the jury with sufficient evidence to assess Munoz's motives by discussing his

11  criminal history and the lenient sentence he hoped to receive in exchange for his testimony.  The

12  Government's closing argument included this admission:

13          Jessie Munoz has pled guilty in this case, and in several others.  And
            I told you he has admitted to doing a lot of bad things.  You can, and
14          you should, view his testimony with great scrutiny.  He is hoping to get
            some reduction in sentence maybe, but he also told you he has agreed
15          to an offense level that is as high as the federal sentencing guidelines
            allow.

16

17  (Respondent's Opp'n. to Mot., at 19.)  Thus, the jury had an accurate picture of factors motivating

18  Munoz to testify.  As discussed, the Government disclosed all favorable information contained in the

19  report in question.[1]  Accordingly, there was no *Brady* violation.[2]

20  **B.      Ineffective Assistance of Counsel**

21      Mincoff next argues that his trial counsel was ineffective in that he failed to impeach Munoz

22  regarding the above referenced conspiracy.   An attorney's representation violates the Sixth

23  Amendment right to counsel if two elements are met. *Strickland v. Washington*, 466 U.S. 668 (1984).

24  First, the attorney's representation must fall below an objective standard of reasonableness. *Id.* at 688.

25

26

27          [1]Absent suppression, the court declines to analyze prejudice.

28          [2]Because the Government did not suppress evidence, there is no basis for Mincoff's claim that
    the suppression of *Brady* evidence effectively denied him the Sixth Amendment right to confrontation.

Here the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id* at 689.  Second, there must be prejudice, *i.e.*, a reasonable ///

probability that but for counsel's errors, the result of the proceedings would have been different.  *Id.* at 694.

Here, it is not reasonably probable that impeaching Munoz regarding a conspiracy to suborn perjury would have changed the result of the proceedings.  While such an accusation might reasonably cause jurors to question Munoz's credibility and the veracity of his testimony, here, Munoz's credibility was already under attack.  Both the Government and Mincoff questioned Munoz about his criminal history and potentially lighter sentence due to his cooperation.  Further, an accusation of subornation of perjury would not have materially undermined Munoz's credibility because his testimony regarding Mincoff was corroborated by clearly inculpatory intercepted telephone calls.  Therefore, Mincoff was not prejudiced by his attorney's failure to question Munoz regarding the conspiracy to suborn perjury.  Absent any prejudice, Mincoff did not receive ineffective assistance of counsel.

### III.

### CONCLUSION

For these reasons, Defendant's motion pursuant to 28 U.S.C. § 2255 is denied.

**IT IS SO ORDERED**.

DATED:  July 26, 2011

_____
HON. DANA M. SABRAW
United States District Judge